(No. 5692—)

KAY LAWLEY, Claimant v. STATE OF ILLINOIS, Respondent.

*Opinion filed December 30, 1977.*

ROUTMAN & LAWLEY, by ROBERT T. LAWLEY, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM WEBBER, Assistant Attorney General, for Respondent.

POLOS, C.J.

Claimant, Kay Lawley, seeks to recover the sum of $38,732.35 from Respondent for her services as a court reporter. Claimant was employed by the State from September 1, 1963 to April 30, 1969 as an official court reporter of the Circuit Court of Sangamon County, Illinois. She was assigned to perform court reporting services for Judge Creel Douglas during this period.

In the course of her employment, Claimant was the court reporter assigned to report all proceedings in a lengthy criminal trial heard by Judge Douglas entitled, *People v. Bassett, et al.* Pre-trial motions were heard in the case in May, 1966, and ended on August 30, 1966. Post trial motions were heard in September, 1967, and sentencing occurred in October. At issue is whether Claimant is due additional compensation for her ser-

vices rendered during those proceedings.

Claimant was the sole witness to testify in this action. She said that at the conclusion of the *Bassett* trial the prosecutors and defense attorneys requested that a rough draft of the transcript be prepared for use in preparing their post-trial motions. Claimant prepared an original and six copies of rough draft transcript, totalling 10,441 pages, which was completed in May, 1967. Claimant submitted a bill to the State for that transcript, computed at the rate of $3.20 per page, and totalling $33,411.20. The bill was approved by the trial judge, and the Department of Public Safety paid the full amount billed. The bill was computed at the same statutory rate as a final transcript.

Subsequently, Chief Circuit Judge William H. Chamberlain challenged this billing, and Claimant submitted a revised bill for the draft transcription, showing a credit of $2,088.20 due to the State.

In January, 1968, Claimant attended a meeting between Judge Douglas and all counsel, to determine how many copies of the trial transcript were needed for preparation of the appeal. It appears that a special Assistant Attorney General requested an original and eight copies, but that Judge Douglas rejected the request as being too costly. Instead, Judge Douglas directed Claimant to prepare one original and one copy of the final transcription. Judge Douglas further directed Claimant to turn the copy over to the State Police headquarters so that they could Xerox as many of the final transcript copies as were needed by counsel in the case.

Claimant used the rough draft transcript in preparing the final draft transcript, and delivered a copy to the State Police as directed by Judge Douglas. The

final transcript totalled 11,068 pages. The State Police delivered the Xerox copies back to Claimant. Claimant said she sorted and bound them, and mailed them to the respective parties.

Claimant submitted periodic billings to the State during her preparation of the final transcript based upon a charge of $1.80 per page. Claimant testified that she computed this charge on the basis of $.60 per page for the original and $.30 per page for each of four copies, even though she was only preparing one copy. Claimant said she charged the State for four copies, despite the order of Judge Douglas that only one copy was to be prepared by her, because she felt she was entitled to charge for a copy for each defendant.

Despite Judge Douglas's order, the bills submitted by Claimant for final transcription based upon preparation of an original and four copies of the final transcript and totalling $19,922.40, was paid in full.

Claimant completed the final transcription of the trial testimony on December 20, 1968. She testified that she was fully paid for her work through that date; but that her billings to that date did not include any work in transcribing the post-trial motions and sentencing.

Claimant said that in January or February, 1969, she contacted one Ray Terrell, a Special Attorney General who had newly been assigned to the Bassett case, and asked for instructions on preparation of the transcript of the post-trial motions and sentencing. She said she was told to prepare a rough draft and then a final draft, as she had done in transcribing the trial testimony. Claimant said she prepared an original and five copies of the rough draft of the post-trial motion proceedings. In March, 1969 she took the draft and her bill to the Department of Public Safety, but she was

advised that they did not want the copies and would not pay for them. Claimant was subsequently advised by the Department that they had not ordered the rough draft copies of the transcript, and that they would pay only for one copy in finished form.

Claimant then stopped typing the transcript of the post-trial proceedings, but upon the request of Judge Douglas did finish the transcript. Claimant filed an original and three copies of the post-trial proceedings, three copies of which were supplied to defense counsel.

Claimant has not been paid for any of the transcription work on the post-trial proceedings, for which she had submitted a bill of $5,482.35.

Claimant's claim before this Court is two-fold. She first asserts that she is due the sum of $32,225.00, representing her statutory charge for four additional copies of the final transcript of the trial proceedings. In essence, it is Claimant's position that because her "work product" was used by the parties to the case, she should be compensated for the four additional copies of the trial transcript furnished to the Department of Public Safety, at the rate of $.75 per page per copy.

Claimant also seeks payment of $3,713.85 for the original and five copies of the rough draft of the post-trial proceedings transcript, and payment of $1,768.50 for the work on the original and three copies of the final post-trial transcription.

Claimant's claim for additional fees for work on the final transcription is founded upon the proposition that she had a propriety interest in those transcripts, and that the parties to the trial proceeds had no right to use those transcripts unless they paid her for the privilege.

This contention clearly has no legal basis. In *Tansor v. Checker Taxi Company, 27 Ill.2d 250, 188 N.E.2d 659, at 633,* our Supreme Court said:

"Any notion that a court reporter or a litigant may have a propriety interest in a transcript of the evidence introduced in a judicial proceeding cannot survive the statute which provides for official court reporters. That statute authorizes each Judge of the Circuit and Superior Courts to appoint an official shorthand reporter, and provides that the salaries of a reporter so appointed shall be paid by the State ... under this statute, neither party can claim a propriety interest in the official reporters notes or transcripts."

Claimant admitted that she was fully paid for her work in preparing the rough and final transcriptions of the trial testimony. She had no propriety interest in that transcript, and there is therefore no basis for her claim that she is entitled to additional compensation because four Xerox copies were made of that transcript and used by the litigants. Her claim for $33,225.00 for the four additional copies of the final trial transcript must accordingly be denied.

We now turn to Claimant's contention with respect to her work on the post-trial proceedings. Claimant seeks payment for preparing an original and five copies of the rough draft of those proceedings, and additional payment for preparing an original and three copies of a "final draft" of those proceedings.

Initially, the Court notes that it is difficult to comprehend why it was necessary to prepare both a rough and final draft of the post-trial proceedings. The Court also notes that in preparing multiple copies of the rough and final transcripts, Claimant violated the spirit and intent of Judge Douglas' express direction that only an original and one copy of the transcript was to be prepared.

Claimant argues that Judge Douglas was without authority to direct that Xerox copies of the transcript be used by the indigent defendants and the State. How-

ever, if Claimant had a quarrel with that order, such rights as she may have had should have been asserted at that time and in another forum. Instead Claimant ignored the order of Judge Douglas, and billed the State for an original and four copies of the trial transcript, although she had herself only prepared an original and one copy. For some reason Claimant was paid for the original and four copies of the trial transcript, notwithstanding the trial judge's express instructions.

Claimant similarly ignored the order of Judge Douglas when she prepared more than one original and one copy of the rough and final transcripts of the post-trial proceedings. Had Claimant heeded the instructions of Judge Douglas and prepared an original and one copy of the rough and final transcripts, she would have been due $1,061.11 for each of the transcripts, or a total of $2,122.22. The Court does not feel that Claimant should profit by her failure to obey the instructions of the trial judge, and finds that Claimant's recovery for work performed on the post-trial proceedings should not exceed the amount she would have charged had those instructions been obeyed.

Claimant admits that she overcharged the State the sum of $2,088.20 for the rough draft of the trial transcript, and that there is a credit owing to Respondent in that amount. Offsetting the State's credit for the overcharge against the amount we have found due to Claimant for her work on the post-trial proceedings, we hereby award Claimant the sum of $44.02.